

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

May 7, 2026

Honorable Sanket J. Bulsara
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Yeleshev v. LaRocco, et. al.*, No. 26-cv-2294 (SJB)

Dear Judge Bulsara:

This Office represents William P. Joyce, Acting Field Officer Director, U.S. Immigration and Customs Enforcement ("ICE"), New York Field Office; Todd M. Lyons, in his official capacity as Acting Director of ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; and Todd Blanche, in his official capacity as Acting Attorney General, U.S. Department of Justice ("Federal Respondents")[1] in the above-captioned case in which Petitioner Yessimkhan Yeleshev ("Petitioner") filed a petition for a writ of habeas corpus on May 6, 2026 challenging his detention by ICE.  *See* Docket Entry ("DE") No. 1 (the "Petition"). Federal Respondents respectfully submit this letter and accompanying Declaration in response to the Court's May 6, 2026 Order and the Petition.

The legal issues presented in this action concern whether Petitioner's detention violates his procedural and substantive due process rights and the Immigration and Nationality Act ("INA"). Petitioner principally seeks an order from this Court directing ICE to immediately release him from detention.

**Factual Background**:

As set forth in the accompanying declaration of Deportation Officer Demetrios Vrahnas ("Vrahnas Decl."), Petitioner was arrested by ICE officers on May 4, 2026 at the U.S. Citizenship and Immigration Services Office located at 1065 Stewart Avenue, Bethpage, NY.  ICE arrested and detained Petitioner pursuant to 8 U.S.C. § 1226(a).

Petitioner is a native of Kazakhstan and entered the United States on or about October 6, 2025, on a B2 Visitor Visa (the "Visa"). Petitioner has been assigned A number 236-526-113. Pursuant to the Visa, Petitioner was authorized to remain in the United States until April 4, 2026,

---

[1]  This office does not represent respondent Anthony J. LaRocco, in his official capacity of Sheriff of Nassau County.

but failed to depart the United States as required.  On May 4, 2026, a decision was made to arrest Petitioner pursuant to  8 U.S.C. § 1226(a).  As set forth in the Vrahnas Declaration, the decision was based on an assessment of Petitioner's danger to the community and flight risk.[2]  On May 4, 2026, a Form I-862 Notice to Appear ("NTA") and a Form I-200 Warrant of Arrest ("I-200") were issued.   On the same day, Petitioner was arrested and served with the NTA and I-200.  Additionally, on the same day, May 4, 2026, ICE conducted an individualized custody determination and Petitioner was served with a Form I-286, Notice of Custody Determination.  Petitioner was detained by ICE on the same day and, also on the same day, transported to Nassau County Correctional Center ("NCCC") in East Meadow, New York.

In the event Petitioner is detained after today, there is a possibility he may be transferred.  ICE is aware of the Court's order limiting his detention to the Eastern District of New York and the Southern District of New York.

**Discussion Regarding the Merits of the Petition**

Detention Authority

The statutory basis for detaining Petitioner is 8 U.S.C. § 1226(a). The legal issues presented concern whether Petitioner's detention violates his due process protections, and the statutory authority for ICE's detention of Petitioner. Petitioner seeks an order from this Court directing Respondents to release him from detention.  Docket Entry No. 1 at p. 10, Prayer for Relief.  While reserving all rights, including the right to appeal, the government submits this letter in lieu of a formal responsive memorandum of law to conserve judicial and party resources, and to expedite the Court's consideration of this case, in light of the decision on the principal legal issues in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) ("*Acurio*"), in which the Court, finding detention based on 8 U.S.C. § 1226(a), released the petitioner where, *inter alia*, there was not adequate pre-detention notice and opportunity for the petitioner to be heard. *See also Gopie v. Lyons, et al.*, No. 25-cv-5229, 2025 WL 3167130, at *3-*4 (E.D.N.Y. Nov. 13, 2025)(SJB) (releasing petitioner because, *inter alia*, an arrest warrant was issued before a notice to appear, and a notice of custody determination was not made before, or at the time of, arrest).

In the Immigration and Nationality Act, Congress enacted a multi-layered statutory scheme for the civil detention of aliens pending a decision on removal, during the administrative and judicial review of removal orders, and in preparation for removal. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. Section 1226 "generally governs the process for arresting and detaining . . . aliens pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When an alien is taken into ICE custody under § 1226(a), an ICE official makes the initial custody determination. *See* 8 C.F.R. §§ 236.1(c)(8), 236.1(d)(1). Per regulations, an ICE officer may "in the officer's discretion, release

---

[2] This Office respectfully requests, should the Court wish to review a copy of the Interpol Red Notice referred to in the declaration (the "Red Notice"), that the Red Notice be submitted to the Court *in camera*.

an alien . . . provided that the alien demonstrates to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 1236.1(c)(8).

The Attorney General and DHS thus have broad discretionary authority to detain an alien during removal proceedings. *See* 8 U.S.C. §§ 1226(a)(1) (DHS "may continue to detain the arrested alien" during the pendency of removal proceedings); *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (highlighting that "subsection (a) creates authority for anyone's arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions"). Here, Petitioner is currently in removal proceedings and ICE exercised its discretion in making the initial custody determination as prescribed by 8 U.S.C. § 1226(a).

Federal Respondents note that several decisions in this Circuit have dismissed petitions similar to Petitioner's here, holding that "to the extent [a petitioner] wishes to challenge [his] initial custody determination, [he] must first exhaust the administrative remedies at [his] disposal" *Rojas v. Genalo,* No. 25-cv-6543, 2026 WL 275991, at *1 (E.D.N.Y. Feb. 3, 2026) (Komitee, J.); *see also Castillo Lachapel v. Joyce, et al.*, No. 25- cv- 4693, 2025 WL 1685576, at *3 (S.D.N.Y. June 16, 2025) (quoting *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018)) ("'[a] habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention'"); *Fontanelli v. Francis*, No. 25-cv- 7715, 2025 WL 2773234, at *5-8 (S.D.N.Y. Sept. 29, 2025) (denying habeas petition without prejudice for failure to exhaust administrative remedies); *see also Capunay Guzman v. Joyce, et al.*, No. 25-cv-4777, 786 F. Supp.3d 865, 870 (S.D.N.Y. June 17, 2025); *Roman v. Decker*, No. 20-cv-3752, 2020 WL 4273823, at * 7 (S.D.N.Y. July 24, 2020); *Paz Nativi v. Shanahan*, No. 16- cv-8496, 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) ("before immigration detention may be challenged in federal court . . . exhaustion is generally required as a prudential matter" (collecting cases)). The exhaustion requirement "aims to provide the agency with a chance to correct its own errors, 'protect[ ] the authority of administrative agencies,' and otherwise conserve judicial resources by 'limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary.'" *Capunay Guzman*, 786 F.Supp.3d at 869 (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.)). Thus, courts in this district have required those challenging their detention under Section 1226(a) to first exhaust administrative remedies. *See, e.g.*, *Rojas*, 2026 WL 275991, *1 (denying habeas petition in light of failure to exhaust).

Here, Petitioner, who is being detained pursuant to 8 U.S.C. § 1226(a), has not availed himself of administrative remedies available pursuant to § 1226(a); specifically, a two - level administrative review process that includes a bond hearing before an immigration judge (*see* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)) and an appeal to the Board of Immigration Appeals ("BIA") should the immigration judge conclude that he should not be released, or the immigration judge has set a bond amount that he believes is too high (*see* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1003.38, 1236.1(d)(3)). *See Monterosa v. Decker*, No. 20-cv-02653, 2020 WL 1847771, at *3 (S.D.N.Y. Apr. 11, 2020) ("After ICE makes an initial detention decision, any person who is detained has the right to request a bond hearing before an Immigration Judge."); *Michalski*, 279 F. Supp. 3d at 496 (finding that a bond hearing is the appropriate avenue for petitioner's request for release from detention where "as opposed to challenging the length of his detention, [petitioner]

3

essentially challenges the arrest and detention under § 1226(a) without any evaluation of legal justification as unconstitutional"). As the court in *Castillo Lachapel* explained, "[i]f the immigration judge releases [Petitioner] on bond, his [habeas] petition would be moot . . . And even if the immigration judge denies bond, [Petitioner]'s petition could be mooted if the Board of Immigration Appeals reverses that determination." 2025 WL 1685576 at *3 (internal quotations and citation omitted). Thus, "[b]ecause [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks— *i.e.*, his release," the Court should require that Petitioner exhaust the administrative avenues available to him pursuant to § 1226(a) before seeking judicial relief. *See id.* Here, Petitioner explicitly makes clear that he has not asked for and is not seeking a bond hearing (Petition ¶¶ 3, 5), yet Petitioner provides no explanation for why he should not be required to exhaust his administrative remedies.

Nor does the government believe that any of the recognized exceptions to exhaustion apply here. A district court may in its discretion excuse exhaustion when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.2d at 62 (quotation omitted). Numerous courts in this Circuit have also found that none of these exceptions apply where, as here, an immigration judge or the BIA could release a habeas petitioner detained under 8 U.S.C. § 1226(a) on bond. *See, e.g.*, *Castillo Lachapel*, 2025 WL 1685576 at *3; *Capunay Guzman*, 786 F. Supp.3d at 870; *Monterosa*, 2020 WL 1847771 at *6-*7; *Roman*, 2020 WL 4273823, at *7.

With respect to the first exception, as explained above, Petitioner has available administrative remedies—a bond hearing with an immigration judge *and* appeal of the immigration judge's decision, if adverse, to the BIA. *See Castilla Lachapel*, 2025 WL 1685576, at *3 (describing the two levels of administrative review available to petitioner). "Because [Petitioner]'s [potential] bond hearing may provide him with the relief that he seeks—i.e., his release—this Court concludes in the exercise of its discretion that [Petitioner] must exhaust these avenues before seeking judicial relief." *Id.* (internal quotations and citations omitted). *See Michalski*, 279 F. Supp. 3d at 496 (finding that a scheduled bond hearing "scuttles" petitioner's habeas petition because the immigration judge could release him on bond making his habeas petition moot); *Paz Nativi*, 2017 WL 281751, at *2 ("The pendency of a BIA appeal that could potentially moot [petitioner's] habeas petition counsels for the Court to stay its hand until the exhaustion of administrative review in the name of preserving scarce judicial resources and avoiding the possibility of duplicative or conflicting rulings.").

The second exception is also inapplicable. Petitioner cannot show irreparable harm at this time. He has been detained for three days, and has an immigration court hearing scheduled for May 13, 2026. *See Capunay Guzman*, 786 F. Supp. at 871 (where petitioner had been detained for approximately nineteen days "'[t]he risk of prolonged detention'—as opposed to actual prolonged detention— 'does not constitute an irreparable injury that excuses the prudential exhaustion requirement'") (quoting *Roman*, 2020 WL 4273823, at *8). *Cf. Michalski*, 279 F. Supp. 3d at 496

4

(petitioner's "claim that prolonged detention constitutes an irreparable injury that may excuse exhaustion has been rejected by courts in this District").

Similarly, as to the third exception, Petitioner has not shown that a bond hearing would be futile. *See Cabral v. Decker*, 331 F. Supp. 3d 255, 263 n. 6 (S.D.N.Y. 2018) ("[T]he question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court.").

With respect to the fourth exception, "[m]ere existence of a constitutional issue . . . does not create an automatic exception to an exhaustion requirement." *Monterosa,* 2020 WL 1847771, at *5. "Thus, when applying this exception, 'courts will endeavor to avoid deciding a constitutional issue if the case might be resolved on a narrower factual basis.'" *Capunay Guzman*, 786 F. Supp. at 871 (quoting *Monterosa*, 2020 WL 1847771, at *5). In any event, the process that is due to Petitioner is a hearing before an immigration judge and an appeal before the BIA; he is not being deprived of that process, except insofar as he chooses to reject that recourse in favor of federal court.

### Petitioner's APA Claim

Finally, to the extent that an APA claim is asserted by the Petitioner for a purported violation of the INA, these statutes are not the proper vehicle for Petitioner's claims arising out of his detention, which drives this suit. In *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025), in which claims including due process claims were brought under the APA, the INA and various habeas provisions, the Supreme Court held that where the claims for relief, as here, "necessarily imply the invalidity of their confinement," regardless of whether he requests release from confinement, those claims "fall within the 'core' of the writ of habeas corpus and must be brought in habeas." The Supreme Court's holding is consistent with well-established law that habeas is generally the only possible district court vehicle for challenges brought pursuant to immigration statutes. *Id.* (citing *Heikkila v. Barber*, 345 U.S. 229, 234-35 (1953)). All the claims in this suit constitute a core habeas claim — though they fail for the reasons discussed above—and are not cognizable under the INA or the APA.  Further, by the APA's terms, it is available only for agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, Petitioner's APA claims are independently barred by this limitation. As noted by Justice Kavanaugh's concurrence in *J.G.G.*, "given 5 U.S.C. § 704, which states that claims under the APA are not available when there is another adequate remedy in court, I agree with the Court that habeas corpus, not the APA, is the proper vehicle here." *J.G.G.*, 604 U.S.at 674 (Kavanaugh, J. concurring). Here, as in *J.G.G.*, habeas is an "adequate remedy" through which Petitioner can challenge his detention.

\*\*\*

5

Accordingly, Federal Respondents have no objection to the Court deciding the Petition on the submissions in lieu of a hearing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ *Marika M. Lyons*
        Marika M. Lyons
        Diane C. Leonardo
        Assistant United States Attorneys
        (631) 715-7822/ 7854
        Marika.lyons@usdoj.gov
        Diane.beckmann@usdoj.gov

cc:     <u>By ECF</u>
        Robert Bond, *Counsel for Petitioner*

6
