THE LAW OFFICES OF

# ROBERT BOND*

ESQUIRE • LLC
USPHS VETERAN US

📍 11880 Bustleton Ave, Ste 206, Philadelphia, PA 19116 📱 **(215) 240-7565**
📍 603 Brighton Beach Ave, 2nd Fl, Brooklyn, NY 11235 📱 **(718) 730-9407**
✉ rbond@phillylawcenter.com

**www.phillylawcenter.com**
*Licensed in Pennsylvania & New Jersey • 📷 @robertbondlaw

May 10, 2026

**VIA CM/ECF**

The Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court for the Eastern District of New York
Long Island Federal Courthouse
100 Federal Plaza
Central Islip, New York 11722

**Re:** *Yeleshev v. LaRocco et al*, No. 2:26-cv-02294-SJB
     **Petitioner's Supplemental Letter Regarding the Court's May 8, 2026 Order and the In Camera Red Notice (Dkt. 11)**

Dear Judge Bulsara:

Petitioner respectfully submits this supplemental letter in advance of tomorrow's hearing to address the Court's May 8, 2026 Order directing Respondents to file the Interpol Red Notice for in camera review and to be prepared to address whether any source of authority outside the Immigration and Nationality Act permits or requires Petitioner's continued detention. The answer is no. Whatever evidentiary significance Respondents may attribute to the Notice, it does not itself furnish domestic detention authority, and nothing in this record identifies any non-INA basis on which Petitioner may continue to be held. Moreover, publicly available Kazakhstani government records reveal that the criminal matter underlying the Red Notice arises from a politically charged prosecution connected to Kazakhstan's controversial pension reform -- a fact that bears directly on the reliability of the Notice and on Petitioner's asylum claim.

## I. No Non-INA Detention Authority Exists on This Record

Federal extradition is treaty-based. The Supreme Court has made clear that the "legal right to demand extradition and the correlative duty to surrender a fugitive to a demanding country exist only when created by treaty," and that international law recognizes "no right to extradition apart from treaty." *Factor v. Laubenheimer*, 290 U.S. 276 (1933). The United States has no bilateral extradition treaty with Kazakhstan, and no extradition proceeding under 18 U.S.C. § 3184 has been initiated. Petitioner is not being held under an extradition warrant, on a provisional arrest request, or in any treaty-based proceeding. He is being held by ICE under immigration process.

Nor does the Red Notice itself supply detention authority. At most, a Red Notice may serve as evidence in a particular immigration merits inquiry. The BIA has said only that a Red Notice "may constitute reliable evidence" in evaluating the serious-nonpolitical-crime bar; it did not hold that a Red Notice is self-executing domestic authority for arrest or detention. *Matter of W-E-R-B-*, 27 I. & N. Dec. 795 (BIA 2020). And the Ninth Circuit has gone further, explaining that an Interpol Red Notice, standing alone, is not ordinarily sufficient to establish probable cause because it is not independently vetted and its reliability therefore "corresponds with that of the foreign nation's arrest warrant." *Oscar Gonzalez-Castillo v. Garland*, 47 F.4th 971 (9th Cir. 2022).

The All Writs Act does not change that conclusion. The Supreme Court has held that the Act is only a residual source of authority and that "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34 (1985). Congress has specifically addressed detention of noncitizens through the INA and, where applicable, extradition through treaty-based procedures. Respondents have identified no treaty-based, warrant-based, or other non-INA source of authority on this record.

## II. The Underlying Criminal Matter Arises from Kazakhstan's Politically Charged Pension Reform Prosecutions

Petitioner has disclosed in his I-589 and prior filings that the criminal matter underlying the Red Notice involves alleged financial activity in connection with Kazakhstan's Unified Accumulative Pension Fund ("UAPF"). The official source of the charges is publicly available. On October 3, 2025, the Financial Monitoring Agency of the Republic of Kazakhstan -- the same government entity responsible for Kazakhstan's anti-money-laundering and financial-crime enforcement -- published a wanted notice on the government's unified platform, gov.kz, naming Petitioner and two co-defendants. The notice appears on the Financial Monitoring Agency's official press page.

> *See* Financial Monitoring Agency of the Republic of Kazakhstan, Press Center, "Attention, Wanted!" (Oct. 3, 2025),
> https://www.gov.kz/memleket/entities/afm/press/news/details/1079957?lang=en.

*Screenshot of the official Financial Monitoring Agency wanted notice, English version.*



The English-language version of the notice reads, in relevant part:

> The Financial Monitoring Agency is searching for the following owners of fictitious dental clinics: Duysenov Aslan Qambaruly, born 01.04.1992; Imanbayev Gabbas, born 18.05.1998; Eleshev Esimkhan Bayandiyevich, born 11.09.1987. They are suspected of organizing criminal schemes to illegally withdraw funds from the UAPF in an amount exceeding 46 billion tenge by issuing fictitious medical documents under the guise of providing dental services. They used 7 dental clinics in the cities of Aktau and Atyrau, which in fact did not conduct medical activities and did not provide services to the public.

The notice then solicits public tips, promises "a reward and anonymity," and states that the suspects "have been remanded in custody as a preventive measure."

This context is critical. The UAPF is Kazakhstan's state-controlled mandatory pension fund. Beginning in 2020, under intense public pressure, the Kazakhstani government permitted citizens to make early withdrawals of pension savings above a minimum threshold -- a reform that was widely publicized, politically contentious, and met with sharp criticism from government authorities who viewed pension liberalization as a threat to state control over accumulated capital. The government subsequently reversed course, tightened withdrawal rules, and launched criminal prosecutions against individuals it accused of facilitating pension withdrawals outside authorized channels. Petitioner's I-589 describes his involvement in advocating for pensioners' rights to access their own funds free from government restrictions -- political activism that placed him in direct conflict with the Kazakhstani authorities who now seek his return.

The charges the Financial Monitoring Agency has publicized must therefore be understood in that political context. The government characterizes pension fund withdrawals as "criminal schemes"; Petitioner characterizes his involvement as pension reform advocacy on behalf of citizens seeking access to their own savings. Whether one calls it financial crime or political dissent is precisely the contested question that an asylum adjudication is designed to resolve -- and precisely the question that the Court should not allow a sealed, unexamined Red Notice to foreclose.

### III. The Red Notice Cannot Bear the Evidentiary Weight Respondents Seek to Place on It

Even as evidence, the Notice cannot do the work Respondents appear to want it to do. Petitioner is a Kazakhstani national with a pending I-589 alleging persecution by the Government of Kazakhstan. Under *Oscar Gonzalez-Castillo*, 47 F.4th at 978, the Notice imports only the reliability of its issuing sovereign. Where the issuing sovereign is the same government alleged to be the persecutor -- and where the charges themselves arise from a politically contested pension reform dispute -- that circumstance does not make the Notice irrelevant, but it does bear directly on the caution with which the Court should assess it. A document produced under seal and attached to a declaration is still only as reliable as the foreign accusation it conveys.

The timing underscores the point. As the current record stands, the Red Notice was not invoked at the asylum interview, not cited in the contemporaneous arrest paperwork, and not identified until the Vrahnas Declaration filed three days after the arrest. If the arrest lacked lawful justification when made, later production of the Notice cannot cure that defect. The Supreme Court has long rejected the proposition that a search or seizure unlawful at its inception may be

justified by what it later turns up. *Wong Sun v. United States*, 371 U.S. 471 (1963). A Notice first surfaced post-arrest cannot retroactively validate the seizure.

### IV. The Criminal Label Does Not Resolve the Political-Motivation Question

Respondents' characterization of the Notice as reflecting a foreign "criminal matter" does not answer the separate question whether the charge is pretextual. The Third Circuit recently reiterated that asylum nexus analysis does not turn on "a hierarchy of motivations in which one is dominant and the rest are subordinate," and that a subordination-based approach is legally incorrect. *Tipan Lopez v. Attorney General*, 142 F.4th 162 (3d Cir. 2025). That decision is not binding here, but its reasoning is persuasive. The label "criminal" does not itself resolve whether the charge is genuine, pretextual, or intertwined with political motives. On this record -- where the criminal charges arise from a pension reform dispute that is itself a matter of political controversy in Kazakhstan -- the Court need not resolve that broader asylum question to decide the narrower detention issue now before it.

### V. Due Process Requires a Meaningful Opportunity to Respond to Sealed Evidence

Petitioner does not object to the Court's in camera review of Dkt. 11. But if the Court is inclined to rely materially on the Notice in resolving the habeas petition, basic fairness requires some mechanism for meaningful response. Due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner," and what process is due depends on the private interest at stake, the risk of error under existing procedures, and the likely value of added safeguards. *Mathews v. Eldridge*, 424 U.S. 319 (1976). In the immigration detention context, the use of undisclosed secret evidence is "presumptively unconstitutional" absent extraordinary circumstances, because secret procedures deny the affected person a meaningful chance to test reliability and respond. *Kiareldeen v. Reno*, 71 F. Supp. 2d 402 (D.N.J. 1999). If the Court will rely on the sealed Notice, Petitioner respectfully requests either a fair summary sufficient to permit response, counsel-eyes-only access under an appropriate protective order, or both.

### Conclusion

For those reasons, and for the reasons set forth in the Petition, the Memorandum of Law, the pre-hearing submission, and the Reply, the Red Notice does not supply a non-INA basis for detention and does not alter the defects already identified in ICE's May 4 arrest. The publicly available FMA notice confirms that the underlying charges arise from Kazakhstan's politically contested pension reform prosecutions -- the very persecution Petitioner seeks asylum from. Petitioner therefore respectfully requests that the writ issue.

Respectfully submitted,


/s/ Robert Bond
Robert Bond, Esquire
Pennsylvania Bar No. 308371
Admitted Pro Hac Vice (Order, Bulsara, M.J., May 6, 2026, ECF)
Law Offices of Robert Bond, Esq.
11880 Bustleton Avenue, Suite 206
Philadelphia, PA 19116
Tel: (215) 240-7565
rbond@phillylawcenter.com

*Counsel for Petitioner*

cc: Marika M. Lyons, AUSA
    Diane C. Leonardo, AUSA
    Jonathan J. Sobel, Esq.